UNITED STATES COURT OF APPEALS
                         FOR THE FOURTH CIRCUIT

                              _____

                              No. 11-6945
                          (4:10-cv-00718-RMG)

                              _____

JAMES G. BLAKELY, a/k/a Jimmy G. Blakely,

            Plaintiff – Appellant,

      v.

ROBERT WARDS, Regional Director; MR. DAVID M. TATARSKY,
General Counsel Attorney; A. PADULA, Warden; M. BELL,
Associate Warden; MAJOR DEAN; NURSE MACDONALD, Head Nurse at
Lee Correctional; J. LIVINGTON, Librarian; A. SMITH,
Business Office Manager at Lee Correctional Institution;
CHAPLAIN T. EVANS; CHAPLAIN CAIN; MS. SIMON, Mailroom
Supervisor at Lee Correctional; LT. JUNE, Wateree Corr; MR.
BAINOR, Medical; MR. BIDDINGER, Cafteria Supervisor; MS.
TAYLOR, Canteen Supervisor; MS. HANCOCK, Commissionary
Manager; JON OZMINT, Director,

            Defendants – Appellees.

                              _____

                              O R D E R

                              _____


      The Court further amends its opinion filed October 21,

2013, as follows:

      On page 9, penultimate line of text -- the spelling of

the word "abused" is corrected.

                              For the Court – By Direction

                              /s/ Patricia S. Connor
                                      Clerk

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

No. 11-6945
(4:10-cv-00718-RMG)

—————————

JAMES G. BLAKELY, a/k/a Jimmy G. Blakely,

Plaintiff – Appellant,

v.

ROBERT WARDS, Regional Director; MR. DAVID M. TATARSKY,
General Counsel Attorney; A. PADULA, Warden; M. BELL,
Associate Warden; MAJOR DEAN; NURSE MACDONALD, Head Nurse at
Lee Correctional; J. LIVINGTON, Librarian; A. SMITH,
Business Office Manager at Lee Correctional Institution;
CHAPLAIN T. EVANS; CHAPLAIN CAIN; MS. SIMON, Mailroom
Supervisor at Lee Correctional; LT. JUNE, Wateree Corr; MR.
BAINOR, Medical; MR. BIDDINGER, Cafteria Supervisor; MS.
TAYLOR, Canteen Supervisor; MS. HANCOCK, Commissionary
Manager; JON OZMINT, Director,

Defendants – Appellees.

—————————

O R D E R

—————————

The Court amends its opinion filed October 21, 2013,
as follows:

On page 28, line 7 -- the citation to "maj. op. at 5-
6" is corrected to read "maj. op. at 5"; on page 35, section
III., second paragraph, line 5 -- the citation to "dissenting
op. at 53-55" is corrected to read "dissenting op. at 53-54"; on
page 36, lines 5-6 -- the citation to "dissenting op. at 54-55"

is corrected to read "dissenting op. at 53-54"; on page 37, footnote *, line 4 -- the citation to "dissenting op. at 56" is corrected to read "dissenting op. at 55" and on line 9 -- "id." is corrected to read "id. at 56".

On page 52, footnote 2, line 1 -- the citation "ante at 27" is corrected to read "ante at 26"; on page 54, footnote 3, line 3 -- the citation "Ante at 36" is corrected to read "Ante at 35"; on page 56, footnote 4 carry-over, line 3, the citation "Id. at 27" is corrected to read "Id. at 26" and on line 5 "id. at 31-36" is corrected to read "id. at 30-35"

For the Court – By Direction


/s/ Patricia S. Connor
Clerk

2

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 11-6945**

---

JAMES G. BLAKELY, a/k/a Jimmy G. Blakely,

Plaintiff – Appellant,

v.

ROBERT WARDS, Regional Director; MR. DAVID M. TATARSKY, General Counsel Attorney; A. PADULA, Warden; M. BELL, Associate Warden; MAJOR DEAN; NURSE MACDONALD, Head Nurse at Lee Correctional; J. LIVINGTON, Librarian; A. SMITH, Business Office Manager at Lee Correctional Institution; CHAPLAIN T. EVANS; CHAPLAIN CAIN; MS. SIMON, Mailroom Supervisor at Lee Correctional; LT. JUNE, Wateree Corr; MR. BAINOR, Medical; MR. BIDDINGER, Cafteria Supervisor; MS. TAYLOR, Canteen Supervisor; MS. HANCOCK, Commissionary Manager; JON OZMINT, Director,

Defendants – Appellees.

---

Appeal from the United States District Court for the District of South Carolina, at Florence. Richard M. Gergel, District Judge. (4:10-cv-00718-RMG)

---

Argued: May 16, 2013            Decided: October 21, 2013

---

Before WILKINSON, NIEMEYER, MOTZ, KING, GREGORY, SHEDD, DUNCAN, AGEE, DAVIS, KEENAN, WYNN, DIAZ, FLOYD, and THACKER, Circuit Judges.

---

Motion for reconsideration denied by published opinion. Judge Wynn wrote the majority opinion, in which Judges Wilkinson,

Niemeyer, Shedd, Agee, Keenan, Diaz, and Floyd joined. Judge Wilkinson wrote a separate concurring opinion, in which Judges Niemeyer, Keenan, and Diaz joined. Judge Duncan wrote a separate opinion concurring in the judgment. Judge Motz wrote a dissenting opinion, in which Judges King, Davis, and Thacker joined, and in which Judge Gregory joined as to Part I. Judge Gregory wrote a separate dissenting opinion.

---

**ARGUED:** Nilam Ajit Sanghvi, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Daniel Roy Settana, Jr., MCKAY, CAUTHEN, SETTANA and STUBLEY, P.A., Columbia, South Carolina, for Appellees. **ON BRIEF:** Steven H. Goldblatt, Director, Doug Keller, Supervising Attorney, Jina Moon, Student Counsel, Matthew T. Vaughan, Student Counsel, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Erin Farrell Farthing, MCKAY, CAUTHEN, SETTANA and STUBLEY, P.A., Columbia, South Carolina, for Appellees.

---

WYNN, Circuit Judge:

With the Prisoner Litigation Reform Act ("PLRA"), Congress sought to reduce the number of frivolous lawsuits flooding the federal courts. Congress did so in part by enacting 28 U.S.C. § 1915(g), a "three-strikes" statute providing that if a prisoner has already had three cases dismissed as frivolous, malicious, or for failure to state a claim for which relief may be granted, the prisoner generally may not proceed in forma pauperis but rather must pay up-front all filing fees for his subsequent suits.

Plaintiff James G. Blakely challenges this Court's denial of his attempt to proceed in forma pauperis on appeal. He contends that his prior actions dismissed as "frivolous, malicious, or fail[ing] to state a claim" cannot count as strikes under Section 1915(g) because these dismissals occurred at summary judgment. But neither the statute itself nor precedent supports Blakely's contention. Rather, the fact that an action was dismissed as frivolous, malicious, or failing to state a claim, and not the case's procedural posture at dismissal, determines whether the dismissal constitutes a strike under Section 1915(g). Because Blakely has had more than three prior cases dismissed expressly as frivolous, malicious, or failing to state a claim, we deny his motion for reconsideration.

3

I.

Blakely, a prisoner in a South Carolina correctional institution, has pursued numerous lawsuits in federal and state courts, including multiple appeals in this Court. In 2010, Blakely filed the underlying Section 1983 action against Defendants, including South Carolina officials such as counsel for the Department of Corrections and "Lee Correctional Institution" employees such as the facility's librarian and chaplain. Blakely alleged various constitutional rights violations.

Defendants removed the case from state court to federal court. A magistrate judge issued a Report and Recommendation deeming Blakely's claims meritless. The district court agreed, granted summary judgment in Defendants' favor, and dismissed the case. Blakely appealed to this Court.

To avoid having to pay the necessary appellate filing fees up front, Blakely sought to proceed in forma pauperis. This Court initially denied Blakely's application to proceed in forma pauperis. After Blakely moved for reconsideration, this Court assigned Blakely counsel and directed the parties to brief whether certain previously-dismissed suits constitute strikes under the PLRA such that Blakely is barred from proceeding in forma pauperis on appeal. The merits of the underlying summary judgment are, therefore, not currently before us. Rather, we

consider only whether Blakely should be allowed to proceed in forma pauperis on appeal.[1]

## II.

### A.

Several of Blakely's previously-dismissed suits were terminated at summary judgment. Blakely contends that such summary judgment dismissals, as a matter of law, cannot constitute strikes under 28 U.S.C. § 1915(g). We review this question of law de novo. Tolbert v. Stevenson, 635 F.3d 646, 649 (4th Cir. 2011).

The section of the PLRA at issue here, known as the three-strikes provision, states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this [in forma pauperis] section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) (emphasis added). In other words, if a prisoner has had three prior cases dismissed as frivolous,

---

[1] Because this Court specifically asked Blakely's counsel to address whether certain orders constitute strikes, we similarly restrict the subject of our analysis here.

5

malicious, or failing to state a claim for which relief may be granted, the prisoner generally must pay up-front all filing fees for his subsequent suits.

Here, Blakely has had more than three prior cases terminated at summary judgment expressly as frivolous, malicious, or failing to state a claim. At the heart of this appeal is the meaning of the word "dismiss" and whether a summary judgment disposing of an action as frivolous, malicious, or failing to state a claim "dismisses" the action such that it constitutes a strike under Section 1915(g).

To interpret statutory language such as Section 1915(g)'s "dismissed," we begin our analysis with the plain language. Salomon Forex, Inc. v. Tauber, 8 F.3d 966, 975 (4th Cir. 1993). "In arriving at the plain meaning, we . . . assume that the legislature used words that meant what it intended; that all words had a purpose and were meant to be read consistently; and that the statute's true meaning provides a rational response to the relevant situation." Id.

In beginning with the language itself, "[w]e customarily turn to dictionaries for help in determining whether a word in a statute has a plain or common meaning." Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen, 152 F.3d 283, 289 (4th Cir. 1998). Doing so here reveals that "dismiss" means "to terminate (an action or claim) without

further hearing, esp. before the trial of the issues involved." Black's Law Dictionary 482 (7th ed. 1999). See also, e.g., The American Heritage Dictionary 520 (4th ed. 2009) ("To put (a claim or action) out of court without further hearing.").

Summary judgments can do precisely that: They can terminate cases without a trial. See Black's Law Dictionary 1573 (9th ed. 2009) ("A judgment granted on a claim or defense about which there is no genuine issue of material fact and upon which the movant is entitled to prevail as a matter of law. . . . This procedural device allows for the speedy disposition of a controversy without the need for trial."). As this Court has noted, the purpose of "[s]ummary judgment is to avoid a useless trial. It is a device to make possible the prompt disposition of controversies . . . if in essence there is no real dispute as to the salient facts." Bland v. Norfolk & S. R.R. Co., 406 F.2d 863, 866 (4th Cir. 1969).

Not surprisingly, then, courts—including the Supreme Court, this Court, and the D.C. Circuit—routinely call summary judgments terminating actions dismissals. See, e.g., Bell v. Thompson, 545 U.S. 794, 798 (2005) (characterizing summary judgment as having "dismissed the habeas petition"); Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 124 (1982) (stating that "the District Court granted petitioners' motion for summary judgment dismissing respondent's complaint"); Poller v. Columbia

7

<u>Broad. Sys., Inc.</u>, 368 U.S. 464, 465 (1962) (referring to summary judgment as "summary judgment of dismissal"); <u>Tolbert</u>, 635 F.3d at 654 (noting that "claims against certain defendants were dismissed upon a motion for judgment on the pleadings, while claims against other defendants were later dismissed on summary judgment"); <u>Thompson v. Drug Enforcement Admin.</u>, 492 F.3d 428, 438 (D.C. Cir. 2007) (characterizing summary judgment as a "procedural mechanism" through which a "court dismisses the complaint").

Even Blakely refers to the summary judgments at issue here as dismissals. In his appellate brief, Blakely argues, for example, that his "prior cases that were dismissed on summary judgment are not strikes" and that "a case dismissed on summary judgment is not a strike . . . ." Appellant's Br. at i.

There is some argument, particularly in the legal academy, that summary judgments should not be called dismissals. <u>See, e.g.</u>, Bradley Scott Shannon, <u>A Summary Judgment Is Not a Dismissal!</u>, 56 Drake L. Rev. 1 (2007). But nothing before us indicates that Congress had any such distinction in mind when it drafted Section 1915(g).

Beyond the word "dismiss," looking at Section 1915 as a whole convinces us that Congress did not seek to curtail courts' authority to dispose of frivolous, malicious, or failed claims at summary judgment by using the word "dismiss." As the D.C.

8

Circuit noted in Thompson, the word "dismiss" in Section 1915(g) is "most plausibly understood as a reference to section 1915(e)(2), which requires the court to 'dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious; [or] fails to state a claim on which relief may be granted.' 28 U.S.C. § 1915(e)(2)." 492 F.3d at 436 (emphasis altered). Logically, if a court must dismiss such a case at any time, it may do so at any procedural posture, including summary judgment.

Further, per Section 1915(a)—a general provision predating the PLRA—a court "may authorize," i.e., has the discretion to allow, the commencement of a suit without prepayment of fees. 28 U.S.C. § 1915(a) ("[A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor . . . ."). We agree with the D.C. Circuit that "our authority to deny IFP status to a prisoner who has abused the privilege is clear. . . ." Butler v. Dep't of Justice, 492 F.3d 440, 445 (D.C. Cir. 2007) (noting that the Supreme Court went "so far as to say that courts have 'a duty to deny in forma pauperis status to those individuals who have abused the system'" in In re Sindram, 498 U.S. 177 (1991) (per curiam)). Thus, under Section 1915(a),

Congress vested in courts the authority to decide whether to grant in forma pauperis status.[2]

By contrast, Section 1915(g) in no way speaks to courts' authority, and certainly does not limit it. Instead, Section 1915(g) limits prisoners' authority—their authority to proceed in forma pauperis after having three prior suits dismissed as frivolous, malicious, or for failing to state a claim. 28 U.S.C. § 1915(g). Thus, Section 1915(g) is a limitation on prisoners' rights, not on courts' authority. Viewing Section 1915(g) as a whole with Section 1915(a) and Section 1915(e)(2), we cannot escape the conclusion that by using the word "dismiss" in Section 1915(g), Congress did not limit courts' ability to dismiss suits at summary judgment for frivolousness, maliciousness, or failure to state a claim.

Our understanding of "dismiss" dovetails seamlessly with the legislative intent underpinning the PLRA. "The impetus behind the enactment of the PLRA was a concern about the 'endless flood of frivolous litigation' brought by inmates." McLean v. United States, 566 F.3d 391, 397 (4th Cir. 2009) (quoting 141 Cong. Rec. S14, 418 (1995)). "To accomplish its goal of reducing the number of frivolous lawsuits," Congress

---

[2] We leave for another day the question of what standard should apply in determining how such discretion should be exercised.

10

imposed on prisoners, among other hurdles, the three-strikes limitation to proceeding in forma pauperis. <u>Green v. Young</u>, 454 F.3d 405, 406-07 (4th Cir. 2006). It would subvert the PLRA's very purpose to prevent cases dismissed on summary judgment from counting as strikes even when those cases were expressly deemed frivolous, malicious, or failing to state a claim. And this we must avoid. <u>See</u> <u>De Osorio v. INS</u>, 10 F.3d 1034, 1043 (4th Cir. 1993) (stating "'the overriding duty of a court is to give effect to the intent of the legislature'").

Therefore, in keeping with Section 1915(g)'s plain language, we hold that a summary judgment dismissal stating on its face that the dismissed action was frivolous, malicious, or failed to state a claim counts as a strike for purposes of the PLRA's three-strikes provision.[3]

## B.

Blakely nevertheless asserts that in <u>Tolbert</u>, 635 F.3d 646, "this Circuit" established "a bright-line rule that a case dismissed on summary judgment is not a strike under § 1915(g)." Appellant's Br. at 19. We do not agree.[4]

---

[3] Whether a court rings the PLRA bell in its opinion or judgment order is immaterial, so long as the summary judgment dismissal is explicitly predicated on one of the three grounds enumerated in Section 1915(g).

[4] Blakely is not alone in his belief that summary judgment orders per se cannot constitute strikes for PLRA purposes. 3 (Continued)

11

In Tolbert, this Court considered whether the three-strikes provision applies only to actions dismissed in their entirety as frivolous, malicious, or failing to state a claim, or whether it also applies to actions in which some, but not all, claims were dismissed on those grounds. 635 F.3d at 647. We held that "§ 1915(g) requires that a prisoner's entire 'action or appeal' be dismissed on enumerated grounds in order to count as a strike." Id. at 651. Because Blakely does not contend that his cases were dismissed only in part on the enumerated grounds, Tolbert's main holding is not on point.

---

Michael B. Mushlin, Rights of Prisoners § 17:35 (4th ed. 2009), states that "[s]ince the statute only counts dismissals for the three specified reasons, dismissals for any other reason will not count as a strike. Thus, a summary judgment dismissal would not count as a strike." Notably, however, the case cited for that blanket proposition, Barela v. Variz, 36 F. Supp. 2d 1254 (S.D. Cal. 1999), is much more nuanced than the treatise suggests. In Barela, the court refused to deem actions previously dismissed on summary judgment strikes because "none of these claims were, strictly speaking, terminated because they were frivolous, malicious, or failed to state a claim." Id. at 1259. The court went on to explain that one suit was dismissed at summary judgment "after extensive litigation and a successful appeal by Plaintiff to the Ninth Circuit." Id. Another was dismissed on summary judgment because "Plaintiff failed to present sufficient evidence to survive summary judgment." Id. And the third and final summary judgment order was dismissed for failure to state a claim only as to one of multiple defendants. The court "f[ound] it unfair to penalize Plaintiff for including a defendant against whom he could not state a cause of action." Id. In other words, the Barela court, too, focused on whether the earlier cases were terminated because they were frivolous, malicious, or failed to state a claim and not on the procedural posture at termination.

12

Tolbert did not present this Court with the question now before us—that is, whether a summary judgment dismissal expressly stating that the underlying suit "is frivolous, malicious, or fails to state a claim" can constitute a strike under Section 1915(g). As Blakely notes, the Court in Tolbert did state that "a grant of summary judgment to defendants also is not one of the grounds listed in § 1915(g), and therefore Lightsey also does not count as a strike." Id. at 654. However, the Lightsey summary judgment at issue in Tolbert did not expressly state that the suit was frivolous, malicious, or failed to state a claim. Brief of Defendants-Appellees at ADD69-ADD71, Tolbert, 635 F.3d 646 (No. 09-8051). Crucially, dismissed suits count as strikes only when "dismissed on the grounds that [they are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted . . . ." 28 U.S.C. § 1915(g). It follows, then, that the Lightsey summary judgment could not have counted as a strike. Indeed, most summary judgment dismissals likely would not qualify as Section 1915(g) strikes because, at that point, frivolousness, maliciousness, and failure to state a claim are not typically addressed.

Further, by the time the Court reached the Lightsey summary judgment in Tolbert, the Court had already held that the other two dismissals at issue did not count as strikes. 635 F.3d at 654. Accordingly, the Court's statement about the Lightsey

13

summary judgment was irrelevant to the outcome of the Tolbert three strikes analysis, i.e., it was mere dictum. Id. at 654-55. Moreover, even if the statement were not inapposite dictum but instead an on-point holding (it is not), we would have the authority to overrule it sitting en banc here. See, e.g., McMellon v. United States, 387 F.3d 329, 333 (4th Cir. 2004) (en banc) (noting that published panel opinions may be "overruled by an intervening opinion from this court sitting en banc or the Supreme Court").

Blakely also looks to Richardson v. Ray, 402 F. App'x 775 (4th Cir. 2010) (unpublished), which this Court cited in Tolbert, to support his argument that a summary judgment cannot constitute a strike. In Richardson, this Court noted that:

> [E]xamination of the district court's order in Richardson v. Grizzard . . . and the subsequent appeal . . . reveals that the action was dismissed on summary judgment and that the appeal was dismissed for being without merit. Because neither the action nor the appeal was dismissed as frivolous, malicious, or for failure to state a claim, neither should have counted as a qualifying strike.

Id. at 776 (emphasis added). Significantly, the Court made clear with the word "because" that the reason the summary judgment dismissal did not constitute a strike was not its procedural posture but rather its failure to ring the PLRA bells of frivolous, malicious, or failure to state a claim. Id.

14

Blakely also draws our attention to Everett v. Whaley, 504 F. App'x 245 (4th Cir. 2013) (unpublished). In Everett, we held that this Court's affirmance of a lower court's dismissal did not qualify as a strike. Id. Notably, we so held not because an affirmance per se cannot constitute a dismissal, but because the affirmance did not turn on an explicit determination that "the appeal was malicious or frivolous." Id. at 246. In other words, we looked to the contents of the disposition and not merely to the procedural posture. Id. Everett is thus consistent with, and indeed supports, our holding here.

Blakely attempts to raise the specter of a circuit split, claiming that allowing a summary judgment dismissal of an expressly frivolous or malicious action would conflict with the D.C. Circuit's decision in Thompson, the Third Circuit's decision in Byrd v. Shannon, 715 F.3d 117 (3d Cir. 2013), and the Sixth Circuit's decision in Taylor v. First Med. Mgmt., 508 F. App'x 488 (6th Cir. 2012). But contrary to Blakely's assertion, those cases bolster, rather than conflict with, our resolution of this case.

The D.C. Circuit did not hold in Thompson that summary judgment dismissals cannot qualify as strikes even when they expressly state that the dismissed suit was frivolous, malicious, or failed to state a claim. Quite the opposite: The Court clarified that what matters for three-strikes purposes is

15

not what a court calls a disposition, but instead whether that disposition states on its face that the disposed-of action met one of the three criteria for a strike. Thompson, 492 F.3d at 436. The court noted:

> To be sure, we can easily imagine a case in which an appellate court expressly states that an appeal was frivolous but erroneously styles its disposition as an affirmance rather than as a dismissal. In such a case, we expect that the reviewing court would regard the earlier disposition as a constructive dismissal under section 1915(e)(2) and, therefore, as a strike. . . . Appellate affirmances [thus] do not count as strikes unless the court expressly states that the appeal itself was frivolous, malicious or failed to state a claim.

Thompson, 492 F.3d at 436, 440 (emphasis added).

Similarly, in Taylor, the Sixth Circuit put the focus on a disposition's contents, and not its procedural posture. The Sixth Circuit noted that an affirmance does not constitute a strike "when the original appellate court declined to implicate § 1915(g) reasons[,]" necessarily implying that an affirmance is not per se a non-strike because it is not, strictly speaking, a dismissal. Taylor, 508 F. App'x at 494. The court held that an appellate decision "affirm[ing] the district court's denial of the motion for a new trial" did not count as a strike because the "language of the opinion does not indicate that the court found the appeal to be frivolous." Id. (emphasis added).

The Third Circuit's Byrd decision, too, accords fully with our holding here by focusing not on the procedural posture at

16

dismissal but rather on whether the dismissal rang the PLRA bells of frivolous, malicious, or failure to state a claim. Specifically, the Third Circuit held that

> a strike under § 1915(g) will accrue only if the entire action or appeal is (1) dismissed explicitly because it is "frivolous," "malicious," or "fails to state a claim" or (2) dismissed pursuant to a statutory provision or rule that is limited solely to dismissals for such reasons, including (but not necessarily limited to) 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B)(i), 1915(e)(2)(B)(ii), or Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Byrd, 715 F.3d at 126. With the first prong of its strike test, the Third Circuit left no doubt that courts must look not only at the procedural mechanism for dismissing a case, but also at the face of the dismissal to see if the dismissing court explicitly deemed the action frivolous, malicious, or failing to state a claim. Id. That is precisely what we are doing here.

This Court has advocated such an approach before—in Tolbert. There, we stated that a case "dismissed, in its entirety, upon a motion for judgment on the pleadings for failure to state a claim"—that is, pursuant to Civil Procedure Rule 12(c)—"would constitute a strike . . . ." Tolbert, 635 F.3d at 654 n.9. Notably, Civil Procedure Rule 12(c) includes neither the word dismiss nor the words "failure to state a claim," and a Rule 12(c) dismissal may be based on grounds other than frivolousness, maliciousness, and failure to state a claim. See Fed. R. Civ. P. 12(c). If a Rule 12(c) dismissal can

17

nevertheless constitute a strike—and we made plain in <u>Tolbert</u> that it can—it defies logic to suggest that a summary judgment dismissal, even if granted on the same basis, cannot.[5]

## C.

Turning, then, to the summary judgment dismissals at issue here, we must determine whether they explicitly state that the terminated actions were "dismissed on the grounds that [they were] frivolous, malicious, or fail[] to state a claim upon which relief may be granted . . . ." 28 U.S.C. § 1915(g).

The four pertinent summary judgment dismissals contain, as Blakely concedes, "language characterizing the summary judgment dismissal[s] as [] strike[s] because . . . [they are] 'frivolous, malicious, or fail[] to state a claim upon which relief may be granted.'" Appellant's Br. at 20-21. Specifically, they state in relevant part that each respective action: should "be considered a 'strike' for purposes of the 'three strikes' rule set forth in 28 U.S.C. § 1915(g). This court holds that this case qualifies as a dismissal on the grounds that it is 'frivolous, malicious, or fail[] to state a

---

[5] "Of course a summary-judgment motion" too "may be made on the basis of the pleadings alone, and if this is done it functionally is the same as a motion to dismiss for failure to state a claim or for a judgment on the pleadings." 10A Wright & Miller, <u>Federal Practice & Procedure</u> § 2713 (3d ed. 2013) (footnotes omitted).

claim upon which relief may be granted[,]'" J.A. 210; and "qualifies as a dismissal on the grounds that it is 'frivolous, malicious, or fails to state a claim upon which relief may be granted'" and thus is properly "classif[ied] as a strike for purposes of 28 U.S.C. § 1915(g)." J.A. 246, 262, 299.

Blakely invites us to reopen these summary judgment dismissals. But the window for challenging the dismissals, which hail from 1999 and 2000, has long since closed, and they are, therefore, final. Cf. Henslee v. Keller, 681 F.3d 538, 541 (4th Cir. 2012). We agree with the D.C. Circuit: "IFP motions present no occasion for relitigating final judgments. Thus, even though a court may believe that a previous court erred . . ., all that matters for the purpose of counting strikes is what the earlier court actually did, not what it ought to have done." Thompson, 492 F.3d at 438-39. See also, e.g., Smith v. Veterans Admin., 636 F.3d 1306, 1313 n.3 (10th Cir.), cert. denied, 132 S. Ct. 381 (2011) (same). Accordingly, we look at the face of each dismissal simply to determine whether it terminated an action explicitly "on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ." 28 U.S.C. § 1915(g).

All four summary judgment dismissals explicitly state (with some minor, immaterial variation) that the "case qualifies as a dismissal on the grounds that it is 'frivolous, malicious, or

19

fails to state a claim upon which relief may be granted.'" J.A. 210. This language essentially mirrors Section 1915(g), stating that an action or appeal "dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted" constitutes a strike. 28 U.S.C. § 1915(g). This language is determinative, and Blakely's summary judgments thus count as strikes.

Again relying on Tolbert, Blakely maintains that courts "should [not] attempt to discern the bases upon which a case was dismissed at summary judgment to determine if it is a strike." Reply Br. at 5. And this Court shared Blakely's judicial economy concern in Tolbert, in which we noted that "requir[ing] district courts to [] parse summary judgment orders and their supporting documents" to determine if the orders constituted strikes "would even further increase their workload, again straying far afield of the purpose of the PLRA." Tolbert, 635 F.3d at 653 n.7.

However, the plain language of the four summary judgment dismissals at issue here belies any such concern. These dismissals explicitly state on their face that Blakely's actions were frivolous, malicious, or failed to state a claim. We fail to see why it would be more difficult for a court to look at the face of a summary judgment dismissal, as opposed to the face of some other dismissal, to see whether there was an explicit

20

determination that a dismissed action or appeal was frivolous, malicious, or failed to state a claim.[6]  Moreover, we agree with the Third Circuit that looking to the face of a dismissal to see whether "the terms 'frivolous,' 'malicious,' or 'fails to state a claim' were . . . used" is easily applied and "does not open the door to more litigation surrounding § 1915(g)."  Byrd, 715 F.3d at 126.  In other words, the bright-line approach we adopt today will help "preserve the resources of both the courts and the defendants in prisoner litigation."  Thompson, 492 F.3d at 438.[7]

---

[6] There is no discernable difference between looking at the face of a summary judgment dismissal to see if it was granted for failure to state a claim and looking at a judgment on the pleadings to see if it was granted for that same exact reason. Neither task requires parsing; rather, both entail simply reading the pertinent judgments issued under rules with texts that do not include the word "dismiss."  Compare Fed. R. Civ. P. 12(c) with Fed. R. Civ. P. 56(a).  Tolbert expressly embraced this approach as applied to judgments on the pleadings.  635 F.3d at 654 n.9.  Refusing to do precisely the same thing in the summary judgment context defies logic.

[7] The dissenting opinion suggests that looking at the face of summary judgment dismissals will require "time-intensive" inquiries and thus increase the burden on the courts.  Post at 49.  Yet under the dissenting opinion's logic, litigants are free to file suits endlessly and with impunity so long as earlier suits that were terminated as frivolous, malicious, or for failing to state a claim were disposed of through a procedural mechanism other than Civil Procedure Rule 12(b)(6). That is surely not what Congress intended when it enacted Section 1915(g), and it surely will not lighten courts' loads.

21

Accordingly, we hold that if a summary judgment dismissal explicitly deems the terminated action frivolous, malicious, or failing to state a claim, then the summary judgment dismissal counts as a strike for Section 1915(g) purposes.[8] Because here, four summary judgment dismissals expressly stated that Blakely's suits were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim for which relief could be granted, those dismissals constitute strikes and bar Blakely from proceeding in forma pauperis on appeal.[9]

## III.

The nub of the majority's and dissent's disagreement is the term dismiss. The dissenting opinion suggests that "dismiss" has a "well-established legal meaning." See post at 46. Yet while the dissent calls this "a lesson learned in the first year of law school," the dissenting opinion fails to articulate what that "well-established legal meaning" is. Id. at 45-46.

---

[8] Inasmuch as Blakely accrued three qualifying strikes in the context of summary judgment, we confine our opinion to summary judgment dismissals.

[9] Blakely also makes various arguments as to why certain other orders should not be counted as strikes. Because our holding regarding the four summary judgment dismissals puts Blakely over Section 1915(g)'s three-strikes threshold, we need not, and therefore do not, address those other orders.

At times the dissent seems to suggest that Civil Procedure Rule 12(b) is at the root of all "actual dismissals." Id. at 47. Yet notably absent from Rule 12(b) is the word "dismiss"—let alone any indication that Rule 12(b) constitutes the sine qua non for actual dismissals. Fed. R. Civ. P. 12(b).

This failure to define the "well-established" term dismiss causes considerable confusion. Is a judgment on the pleadings a dismissal? In Tolbert, a unanimous panel writing for this Court certainly indicated that it is. 655 F.3d at 654 n.9. Is a Rule 11 sanction of dismissal an "actual dismissal"? Post at 47. Or are the many courts that have styled Rule 11 sanctions as "dismissals" also simply "overbroad" and "imprecise" in their use of that term?[10] Post at 45.

The dissenting opinion cites to a collection of cases in A Jailhouse Lawyer's Manual to support its contention that a case resolved on summary judgment is not "dismissed" and thus does not constitute a strike—a point allegedly so obvious that courts "simply have assumed as much." Post at 44. But that source also cites to a case on all fours with our contrary view. In Davis v. Kakani, CIV.A. 06-13704, 2007 WL 2221402 (E.D. Mich.

---

[10] See, e.g., Jimenez v. Madison Area Technical Coll., 321 F.3d 652 (7th Cir. 2003); Green v. Dorrell, 969 F.2d 915 (10th Cir. 1992); Combs v. Rockwell Int'l Corp., 927 F.2d 486 (9th Cir. 1991).

23

July 31, 2007), the court deemed a summary judgment dismissal for failure to state a claim a strike for Section 1915(g) purposes, noting:

> Although such a [summary judgment] dismissal does not seem to fall into the category of qualifying dismissals under section 1915(g), a review of the Magistrate Judge's Report and Recommendation shows that the court found that Plaintiff had failed to state a claim upon which relief could be granted. . . . Accordingly, this dismissal was based on Plaintiff's failure to state a claim for relief and therefore qualifies as Plaintiff's third strike.

2007 WL 2221402, at *2.

Even more telling is the D.C. Circuit's willingness to deem an appellate court's affirmance a dismissal in Thompson. The D.C. Circuit made plain that it would view an affirmance "in which an appellate court expressly states that an appeal was frivolous" as a "constructive dismissal" "and, therefore, as a strike." Thompson, 492 F.3d at 436. Following the D.C. Circuit's logic in Thompson inescapably leads to the conclusion that a summary judgment dismissal stating that the matter is dismissed as frivolous, like an appellate affirmance stating precisely the same thing, is a dismissal and strike.

Ultimately, the dissenting opinion takes the position that with Section 1915(g), Congress was more concerned with the procedural mechanism for terminating cases that are frivolous, malicious, or fail to state a claim than the substantive reality that those cases were in fact terminated on the grounds that

24

they were frivolous, malicious, or failed to state a claim. With this, we cannot agree.

Section 1915(g) as Congress passed it, the legislative intent underpinning it, and the precedent interpreting it all convince us that an action's dismissal as frivolous, malicious, or failing to state a claim, and not the case's procedural posture at dismissal, determines whether the dismissal constitutes a strike. Because Blakely has had more than three prior cases dismissed at summary judgment expressly as frivolous, malicious, or failing to state a claim, we deny his motion for reconsideration.

IV.

For the foregoing reasons, Blakely's motion for reconsideration is denied.

DENIED

25

WILKINSON, Circuit Judge, concurring:

I agree fully with the majority's reasons for denying Blakely's application to proceed IFP, namely that at least three of his prior actions constitute strikes because they were dismissed at summary judgment with language stating that they were "frivolous, malicious, or fail[ed] to state a claim." I write separately simply to observe that there is another ground on which Blakely's IFP application should be denied -- one that would hew to the clearly expressed intent of Congress in § 1915. As the majority properly notes, see maj. op. at 9, regardless of whether Blakely's application for IFP status must be denied by virtue of the mandatory three-strikes rule prescribed in § 1915(g), we possess ample discretion to deny his request under the residual authority conferred upon courts by § 1915(a). Notwithstanding the efforts of the dissent to sow differences between the majority and concurring opinions, the concurrence stands firmly with the majority. Both opinions, moreover, recognize that § 1915(g) and § 1915(a) serve distinct but complementary functions. See maj. op. at 9-10. Here the discretionary denial inquiry cuts the Gordian Knot -- and in doing so, protects the federal courts from the most abusive litigants. As a review of Blakely's extensive litigation history makes plain, this is a paradigm example of the type of

case in which the discretionary denial of an IFP application would be appropriate.

I.

As demonstrated by the differing views of my colleagues in this case, reasonable people can disagree on the question of whether Congress intended that the summary judgments issued against Mr. Blakely should count as strikes under 28 U.S.C. § 1915(g). I am persuaded that Judge Wynn's fine opinion for the court provides the correct answer to that question. But the debate has focused primarily on just the first of two steps that exist in Congress's well-crafted scheme for determining whether to permit a prisoner to proceed in forma pauperis. In my view, the second step is as important as the first.

To explain, when a federal court receives an IFP application from a prisoner who has a track record of filing multiple unsuccessful actions in federal court, 28 U.S.C. § 1915 offers two paths of inquiry for determining whether the prisoner's application should be denied as a consequence of his prior litigation conduct. The first inquiry asks whether the application must be rejected under the three-strikes provision contained in § 1915(g). Phrased as a limitation on the rights of prisoners, § 1915(g) provides that "in no event shall a prisoner" be entitled to IFP status in his action or appeal if

27

"on 3 or more prior occasions" he has "brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim." The provision thus creates a mandatory-denial baseline for IFP applications: if a prisoner has three strikes, he is categorically precluded from proceeding IFP (absent a showing of imminent danger of serious physical injury). See maj. op. at 5; see also 3 Michael B. Mushlin, Rights of Prisoners § 17:34 (4th ed. 2012).

If a prisoner has not accumulated three qualifying strikes, courts may proceed to a second inquiry through which they possess the power to deny IFP filing status at their own discretion. To that end, the in forma pauperis statute provides that "any court of the United States may authorize" a prisoner to proceed IFP; it does not say that a court must do so. 28 U.S.C. § 1915(a)(1) (emphasis added). Notably, the Supreme Court relied on the statute's use of the word "may" to hold in In re McDonald that it was under no obligation to award IFP filing status to a prisoner with a history of abusive litigation conduct. 489 U.S. 180, 183-84 (1989) (per curiam). The Court reasoned instead that it possessed the authority to deny IFP status "in the interests of justice." Id. at 184; see also In re Sindram, 498 U.S. 177, 180 (1991) (per curiam) (noting that "the Court has a duty to deny in forma pauperis status to those

28

individuals who have abused the system"). And when Congress amended the law some seven years after McDonald to impose the mandatory three-strikes limitation on prisoners' IFP privileges, it left untouched the word "may" in § 1915(a) -- implicitly ratifying the Court's recognition of the discretionary power to deny IFP applications.

Unsurprisingly, then, the authority of courts to issue discretionary IFP denials continues to enjoy wide acceptance. For example, the D.C. Circuit relied on its discretionary authority to deny IFP status to a prisoner in Butler v. Department of Justice, even though the prisoner in that case had not run afoul of the mandatory three-strikes rule. 492 F.3d 440, 444-45 (D.C. Cir. 2007). In doing so, the court echoed the Supreme Court's reasoning in McDonald, explaining that its "discretionary authority to deny IFP status to prisoners who have abused the privilege" derived from § 1915(a) itself, which provides just that a court "may" authorize a prisoner to proceed IFP. Id. Still more recently, in May 2013, the Supreme Court issued a discretionary denial of IFP status in Cardona v. Thomas, explaining that it would not accept "any further petitions in noncriminal matters from" Cardona without up-front payment of the docketing fee because he had "repeatedly abused this Court's process." 133 S. Ct. 2404 (2013) (per curiam).

II.

In deciding whether to exercise their discretion to deny a request for IFP filing status, courts may consider the "number, content, frequency, and disposition of the [prisoner's] previous filings." Butler, 492 F.3d at 445; see also, e.g., In re Anderson, 511 U.S. 364, 365 (1994) (per curiam) (denying petitioner's request to proceed in forma pauperis where he had filed 22 petitions and motions over three years, none of which were successful, and several of which were repetitive and "patently frivolous"). Applying that standard here, Blakely's profligate filing history surely warrants denial of his IFP application.

With respect to the number and frequency of his filings, Blakely does not dispute that he filed eight actions in federal district court in South Carolina during the 1998 calendar year alone and that he filed a ninth action in the same court in 2000. All nine of these cases were disposed of by May 2000. Three years later, this court issued an order in Blakely v. South Carolina Department of Corrections, denying his application to proceed IFP in that appeal on the ground that he had violated § 1915(g)'s three strikes rule. No. 03-6765 (4th Cir. June 20, 2003). That 2003 denial of his IFP request precipitated a period of repose from Blakely's onslaught of federal court filings, as Blakely avers that until 2011, he

30

"waited over 7 years to file anything in federal court." J.A. at 14.

It seems, however, that Blakely did not stop filing lawsuits altogether in the intervening timeframe. Appellees explain that he instead began filing suits in state court, apparently commencing some 26 actions in the Richland County South Carolina Court of Common Pleas alone. Appellees' Brief at 5. While Blakely correctly points out that records of these various state court filings are not formally included in the joint appendix to this case, see Appellant's Reply Brief at 25, he nowhere denies that he did in fact file a multitude of prison actions in state court after our 2003 denial of his IFP privileges. Blakely also contends that these state court filings should not be considered at all for purposes of our discretionary inquiry since the IFP statute is concerned principally with abuse of the federal court system. See id. But even if his decision to subject the state courts to a torrent of litigation is to somehow be considered a mark in his favor, that choice does not compel us to blind ourselves to his ongoing pattern of litigation conduct.

More importantly, it turns out that Blakely's decision to change course and sue in state court was merely a temporary detour. For Blakely has recently resumed filing cases in federal court with gusto: in 2012 alone, he filed nine

31

additional actions in South Carolina district court. Blakely v. Andrews, No. 5:12-cv-03004-MGL (D.S.C. filed Oct. 18, 2012); Blakely v. Cartledge, No. 5:12-cv-02649-MGL-KDW (D.S.C. filed Sept. 14, 2012); Blakely v. Greenville Cnty., No. 6:12-cv-02587-MGL (D.S.C. filed Sept. 7, 2012); Blakely v. Moore, No. 5:12-cv-02270-MGL (D.S.C. filed Aug. 9, 2012); Blakely v. Thompson, No. 5:12-cv-02150-MGL (D.S.C. filed Aug. 1, 2012); Blakely v. Hallman, No. 5:12-cv-01289-MGL (D.S.C. filed May 17, 2012); Blakely v. Moore, No. 5:12-cv-01214-RMG (D.S.C. filed May 8, 2012); Blakely v. Thompson, No. 5:12-cv-00972-MBS (D.S.C. filed Apr. 5, 2012); Blakely v. McCall, No. 5:12-cv-00410-RMG (D.S.C. filed Feb. 13, 2012). Thus, even without considering any of Blakely's various state court actions, it is beyond dispute that he is a prolific filer in terms of both number and frequency, having initiated at least seventeen cases in a single federal district court during just the 1998 and 2012 calendar years.

Blakely suggests that because appellees did not themselves provide the above case information, "it is not clear if the[] [cases] even involve the same individual." Appellant's Reply Br. at 25. However, apart from his conclusory assertion that appellees have failed to prove that these cases were filed by him (as opposed to being filed by a different prisoner sharing the same name and middle initial in the same district court),

Blakely has never actually claimed that he did not file the above actions in 2012.

The third factor for our consideration, the disposition of his previous actions, also militates against Blakely's IFP application. Blakely does not dispute that, of the many federal actions he filed in 1998, every one of them terminated in an adverse disposition. He also does not contend that he has prevailed in any of his more recently filed federal actions. In short, Blakely has failed to point to a single case of his (filed in either state or federal court) that has resulted in a final ruling in his favor.

This makes sense when one considers the content of his claims, the final factor that guides our discretionary inquiry. While Blakely does not challenge the fact that all of his cases have ultimately been deemed without merit, several of his cases were especially lacking. For example, in two of his 1998 federal court actions, Blakely asked the district court to enter an order compelling the defendants (the State of South Carolina and the Greenville County Judicial System) to acquit him of all pending charges against him in state court. See Blakely v. Greenville Cnty. Judicial Sys., No. 0:98-cv-02978-MBS (D.S.C. Mar. 25, 1999) (at J.A. 227-231); Blakely v. Greenville Cnty. Judicial Sys., No. 0:98-cv-02313-WBT (D.S.C. Sept. 1, 1998) (at J.A. 190-201). In one of the cases, the apparent basis of his

33

request was that the presiding judge violated the Double Jeopardy Clause by allowing a homicide detective to testify against him at a preliminary hearing and then again later on in the proceedings. See J.A. at 192.

Furthermore, as has been discussed extensively, more than three of Blakely's actions were dismissed at summary judgment with language stating that they were "frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted." Regardless of whether this language converted these dismissals into strikes under § 1915(g) (and I agree with the majority that it did), our court is free to consider the language as a negative comment on the substance of Blakely's claims in deciding whether to deny in our discretion his IFP request.

In sum, all four factors -- the number, frequency, disposition, and content of his previous filings -- cut against Blakely's IFP application. By way of comparison, his track record is at least as egregious as that of the prisoner in Butler, whose application the D.C. Circuit found to be an easy case for discretionary denial. See 492 F.3d at 446 (noting that Butler had filed ten appeals in the D.C. Circuit, eight of which were in a four-year period, as well as some fifteen other listed actions). Thus, because Blakely is a serial filer who has taken undue advantage of IFP status, it would be a proper exercise of

34

our discretion to require Blakely to shoulder up front the cost of his filing fees before proceeding in this court.

## III.

My fine colleague in dissent disputes none of Blakely's copious litigation history. The dissent takes no issue with the fact that Blakely has filed dozens of lawsuits in state and federal court since 1998, twice filing almost ten meritless lawsuits in a single calendar year. This pattern of abuse is scarcely mentioned by the dissent. It appears of little moment, something Congress would not wish considered and courts may largely disregard.

Notwithstanding the full extent of Blakely's prior abuse of IFP status, the dissent proceeds to add a limitation to § 1915(a)(1) that is nowhere in the statutory text. According to the dissent, courts may deny IFP status only if the criteria under § 1915(g) are met. <u>See</u> dissenting op. at 53-54 (delineating § 1915(g) as the sole operative rule). Not surprisingly, this view of the statute simply fails to accord with the plain meaning of § 1915(a)(1), which afforded courts the discretionary authority to authorize IFP status, but nowhere limits that discretion in the manner the dissent now wishes to prescribe. The statute the dissent wishes Congress had written

35

would have been easy enough to draft, but the limiting reference to subsection (g) is, alas, nowhere to be found.

The dissent likewise overlooks the basic structure of the statute. It reads § 1915(g) to completely swallow up the separate provision in § 1915(a)(1). See dissenting op. at 53-54. This ignores the fact that we are expected to give effect to all provisions in a statute, not just some. It also overlooks the distinctive and complementary roles played by § 1915(a)(1) and § 1915(g), the first of which is a conferral of authority upon courts, and the latter of which is a limitation upon repetitive lawsuits by prisoner litigants. The provisions function in tandem, and they manifestly foreclose the view offered by the dissent -- namely that in enacting a restriction on litigious conduct in one provision, Congress somehow meant to broadly expand the possibilities for this precise conduct in another.

The dissent's position is finally not only at odds with the language and structure of the statute, but with its purpose as well. It would incentivize prisoners with abusive litigation histories to continue their litigious pattern, for under the dissent's view, petitioner's extensive litigation history would count for absolutely nothing in the discretionary calculus, the very scenario Congress intended to forestall. To support its view, the dissent attempts to cabin Supreme Court cases that

stand without question for the principle that courts are not obliged to step aside and watch their processes subject to the disregard that occurred with such incessant frequency as here. See In re Sindram, 498 U.S. 177, 180 (1991) (per curiam) (noting that "[T]he Court has a duty to deny in forma pauperis status to those individuals who have abused the system."); In re McDonald, 489 U.S. 180, 184 (1989) ("A part of the Court's responsibility is to see that [IFP] resources are allocated in a way that promotes the interests of justice."). These statements too would be undermined were the dissent's view to prevail.[*]

## IV.

Federal courts have the obligation to reserve their attentions for those litigants who have not previously abused the system. Congress too has an interest in not having the resources of a coordinate branch misused and squandered -- an

---

[*] The remaining points in the dissenting opinion can be readily addressed. While the dissent complains that a multi-factor test for the exercise of discretionary authority is "amorphous," dissenting op. at 55, it is not up to us to say that a general grant of discretionary authority, quite common to the law, is on that account impermissible. The dissent's further complaint that IFP status has been denied on the basis of previous abuse "regardless of the merit of his current case," id. at 56, overlooks the fact that prior abuse is not infrequently a basis for some present loss of privilege, in this case without the need to draw courts into the merits of a prolific litigator's every latest offering.

interest expressed in the complementary provisions of § 1915(a) and (g). If this litigant were granted IFP status, I have a difficult time envisioning one who would not be. The majority rightly notes that in § 1915(a) "Congress vested in courts the authority to decide whether to grant in forma pauperis status," maj. op. at 10, and I am happy to concur in its thoughtful opinion.

Judges Niemeyer, Keenan, and Diaz have kindly asked me to show them as joining in this opinion.

DUNCAN, Circuit Judge, concurring in the judgment:

I respectfully concur in the judgment of the majority, which denies in forma pauperis ("IFP") status to a litigant with a history of abusive filings, although I cannot endorse its reasoning. Like the dissent, I believe that a summary-judgment disposition cannot constitute a strike under 28 U.S.C. § 1915(g). I must part company with the dissent, however, due to its surprising assertion that the Prison Litigation Reform Act of 1995 ("PLRA") sub silentio limits both district courts' preexisting statutory discretion under § 1915(a) and the inherent authority of district courts to handle their caseload.

Turning first to the majority's view, I commend its attempt to formulate a bright-line rule for determining when summary judgment qualifies as a dismissal under the PLRA. Unfortunately, this approach may lead to curious results and further confusion. According to the majority, a grant of summary judgment on the ground that a suit is "frivolous" would count as a strike, but the same ruling on the ground that the action is "patently meritless" would not. And, it is not clear how the majority would treat a grant of summary judgment noting that the disposition "counts as a strike under § 1915(g)" but without listing the specific ground for the strike. I would respectfully suggest that engaging in such hairsplitting is less desirable than relying on the bright line actually established

39

by the statute: limiting strikes to actions that are in fact dismissed. As the dissent persuasively points out in its first part, the term "dismissed" is far from the amorphous concept that the majority suggests. Rather, dismissal is a term of art with a specific legal provenance.

This hairsplitting is all the more puzzling because, as the judges who join Judge Wilkinson's concurrence implicitly recognize, it is unnecessary. Questions about the IFP status of an abusive prisoner-litigant can be decided more narrowly and cleanly, and therefore should be so decided. A review of past summary judgment orders in search of the majority's magic words is surely an unnecessary exercise on behalf of a prisoner-litigant who has abused the privilege of IFP status to the extent that Mr. Blakely has. Courts can address this type of case by exercising their authority under § 1915(a) without straining the meaning of the term "dismiss" in § 1915(g). The PLRA, after all, was intended to constrain litigants, not courts.

For this reason, I must take issue with the dissent's view of courts' discretionary authority under § 1915. Its discussion about the specific language of the PLRA governing the general, preexisting language of § 1915(a)(1) is as irrefutable as it is irrelevant--§ 1915(a) and § 1915(g) in no way conflict. One is a grant of discretion to courts and the other is a limitation on

40

prisoners' ability to proceed IFP. The explicit terms of the PLRA that became § 1915(g), which the dissent cites approvingly, apply only to prisoners who have accrued three strikes. Nowhere does the PLRA curtail courts' preexisting discretionary authority.* Furthermore, Tolbert v. Stevenson, 635 F.3d 646 (4th Cir. 2011), on which the dissent relies, suggests reading § 1915(a)(1) and § 1915(g) as complementary provisions, although it did not decide whether a discretionary denial of IFP status was appropriate in that case. Id. at 654. That opinion notes that the presence of discretionary authority as an alternative ground for denying IFP status removes the need for an expansive interpretation of the term "dismissed." Id.

As the separate concurrence recognizes, there is a compelling alternative route to the majority's result. Thus, a broad interpretation of "dismissed" pushes the statutory language further than Congress intended for no discernible reason. I therefore concur in the majority's decision to deny Mr. Blakely IFP status, but would do so based on discretionary authority.

---

\* Before the PLRA was enacted, the Fourth Circuit acknowledged that courts had the discretion under § 1915(a) to deny a litigant IFP status. See Graham v. Riddle, 554 F.2d 133, 134–35 (4th Cir. 1977).

41

DIANA GRIBBON MOTZ, Circuit Judge, dissenting:

More than thirty-five years ago, the Supreme Court recognized that it is "established beyond doubt that prisoners have a constitutional right of access to the courts." Bounds v. Smith, 430 U.S. 817, 821 (1977). Certainly, that right is not without limits. The three-strikes rule imposes a notable limit on a prisoner's ability to proceed in forma pauperis ("IFP"). 28 U.S.C. § 1915(g). But this limit must have its own limits and Congress recognized as much. Only by disregarding the clear statutory language of § 1915(g) can the majority hold that a grant of summary judgment constitutes a "dismissal" for purposes of the statute. In doing so, the majority improperly restricts access to the courts well beyond Congress' intent. With respect, I dissent.

I.

The theory offered by the majority for its holding is belied by the unambiguous language of § 1915(g) itself and the Supreme Court's instruction as to proper statutory construction.

Section 1915(g) expressly provides that a prisoner may not proceed IFP "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal . . . that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which

42

relief may be granted." Id. (emphasis added). The plain language of § 1915(g) thus states that only cases that are "dismissed" can constitute strikes. This language makes clear that cases resolved by a procedure other than dismissal -- like summary judgment, as in this case -- are not strikes.

Time and again, the Supreme Court has directed us to defer to "the language employed by Congress" and adopt "the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist., 541 U.S. 246, 252 (2004) (internal quotation marks and citation omitted). Staying true to that directive requires rejection of the majority's theory.

In Tolbert v. Stevenson, 635 F.3d 646, 654 (4th Cir. 2011), a unanimous panel of this court correctly recognized as much, holding that "a grant of summary judgment . . . is not one of the grounds listed in § 1915(g), and therefore . . . does not count as a strike." Our Tolbert rule comports with the position of all other courts of appeals to have reached the question. As the District of Columbia Circuit has explained, "if the court dismisses an unexhausted complaint on a Rule 12(b)(6) motion or if it dismisses the complaint sua sponte and expressly declares that the complaint fails to state a claim, the dismissal counts as a strike." Thompson v. DEA, 492 F.3d 428, 438 (D.C. Cir. 2007). "But if the court dismisses the complaint on some other

43

procedural mechanism, such as . . . a motion for summary judgment, the dismissal will not count as a strike." Id.; accord Taylor v. First Med. Mgmt., 508 F. App'x 488, 494 (6th Cir. 2012); Stallings v. Kempker, 109 F. App'x 832, 832-33 (8th Cir. 2004) (per curiam); Angelle v. Gibson, No. 00-50675, 2001 WL 498763, at *1 (5th Cir. Apr. 12, 2001) (per curiam).

Indeed, that a case resolved on summary judgment is not "dismissed" and thus does not constitute a strike for § 1915(g) purposes is so obvious that at least three circuits, and numerous district courts, simply have assumed as much in unpublished opinions. See Taylor, 508 F. App'x at 494 ("The plain language seemingly limits the application of a strike to dismissals by only speaking of dismissals."); Stallings, 109 F. App'x at 832-33 ("Because the district court resolved the case through summary judgment, the dismissal does not constitute a 'strike' . . . ."); Angelle, No. 00-50675, 2001 WL 498763, at *1 ("Because the district court's dismissal for failure to state a claim acted as a grant of summary judgment, the district court's judgment does not count as a 'strike.'"); see also A Jailhouse Lawyer's Manual ch. 14 n.85 (8th ed. 2009) (collecting cases).

Regrettably, today the majority rejects the rule adopted in Tolbert and by our sister circuits and concludes that cases resolved on summary judgment count as strikes. Neither of the rationales offered for doing so is persuasive.

44

A.

The majority's initial -- and extraordinary -- rationale for this theory is that the plain language of § 1915(g) somehow permits a grant of summary judgment to count as a strike. The majority relies on the fact that in "common usage," disposition on summary judgment is sometimes referred to as "dismissal" and that the dictionary definition of "dismiss" is "to terminate (an action or claim) without further hearing, esp. before the trial of the issues involved." Black's Law Dictionary 482 (7th ed. 1999). But neither imprecise common usage nor an overbroad dictionary definition can eliminate a lesson learned in the first year of law school: dismissal and summary judgment differ in important respects. Both can terminate an action, but a case resolved by summary judgment is not "dismissed."

In the very context of the three-strikes rule, we have emphasized that "[w]hen Congress directly incorporates language with an established legal meaning into a statute, we may infer that Congress intended the language to take on its established meaning." McLean v. United States, 566 F.3d 391, 396 (4th Cir. 2009); accord Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation.").

The word "dismissed" in § 1915(g), particularly "coupled with the words '[for] fail[ure] to state a claim upon which

45

relief may be granted,' . . . has a well-established legal meaning." See McLean, 566 F.3d at 396. And that well-established legal meaning obviously differs from the equally well-established legal meaning of summary judgment. Compare Fed. R. Civ. P. 56 (defining the distinct basis for summary judgment) with Fed. R. Civ. P. 12(b)(6) (listing grounds for dismissal including failure to state a claim upon which relief can be granted) and 28 U.S.C. § 1915(e)(2) (listing grounds for dismissal including frivolity, maliciousness, and failure to state a claim); id. § 1915A(b) (same); 42 U.S.C. § 1997e(c) (same).[1]

I find perplexing the majority's repeated assertion that a dismissal and a grant of summary judgment differ only in their "procedural posture." See ante at 3, 9, 15. Even if this were so, this is not an insignificant difference. Rather, "procedural posture" may make all the difference. See, e.g., Lucas v. S.C. Coastal Comm'n, 505 U.S. 1003, 1013 n.3 (1992).

---

[1] The majority posits that I consider dispositions under Federal Rule of Civil Procedure 12(b)(6) to be the only "actual dismissals" for the purpose of § 1915(g). Not so. As noted in the text above, dismissals pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b) and 42 U.S.C. § 1997e(c) also count as strikes because those statutes expressly direct courts to "dismiss" an action if it is frivolous, malicious, or fails to state a claim. My emphasis on Rule 12(b)(6) serves only to illustrate from the well developed law considering Rule 12(b)(6) motions that "dismissal" differs from "summary judgment."

46

In any event, a dismissal and a grant of summary judgment differ from each other in far more than "procedural posture." See Bradley Scott Shannon, A Summary Judgment Is Not a Dismissal!, 56 Drake L. Rev. 1, 7 (2007) (summarizing differences in moving party, timing of motion, ability to waive, determining propriety of jurisdiction, nature of relevant evidence, appealability, preclusive effect, etc.). And, contrary to the majority's suggestion, these differences are well recognized. See, e.g., Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990); Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

To be sure, if Congress had wanted § 1915(g) to cover more than actual dismissals, it could have said so. The fact that it did not speaks volumes, as we and other courts have previously explained. See, e.g., Green v. Young, 454 F.3d 405, 409 (4th Cir. 2006) ("The . . . three-strikes provision by its terms applies only if a prisoner has had three prior actions dismissed as 'frivolous, malicious, or [for] fail[ure] to state a claim . . . .' Because a dismissal for failure to exhaust is not listed in 1915(g), it would be improper for us to read it into the statute."); Butler v. Dep't of Justice, 492 F.3d 440, 444 (D.C. Cir. 2007) ("Had Congress wanted to include dismissals for failure to prosecute among the strikes listed in § 1915(g), it could have done so. If we were to adopt the government's approach, we would be effectively writing another category of

47

strikes into the [statute]. We have neither the authority nor inclination to substitute our policy judgment for that of Congress.") (internal citation omitted).

In sum, the plain language of § 1915(g) most certainly does not permit a court to treat a case resolved by summary judgment as "dismissed" and so count it as a strike for purposes of § 1915(g).

B.

The majority also attempts to rely on Congress' "intent" in drafting the three-strikes rule. It maintains that there is no indication Congress had in mind at the time the "academic" distinction between dismissal and summary judgment. It emphasizes that an overriding purpose of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which established the three-strikes rule in § 1915(g), was to limit frivolous prisoner suits as much as possible. See, e.g., 141 Cong. Rec. S14,418 (daily ed. Sept. 27, 1995) (statement of Sen. Orrin Hatch) ("Our legislation . . . addresses the flood of frivolous lawsuits brought by inmates.").

The majority ignores the fact, however, that reducing frivolous suits was but a means to an end: by enacting the PLRA, Congress intended most fundamentally to reduce the burden on overworked courts. See id. ("The crushing burden of these frivolous suits makes it difficult for courts to consider

48

meritorious claims."); 141 Cong. Rec. S7526 (daily ed. May 25, 1995) (statement of Sen. Jon Kyl) (noting that frivolous suits were "draining precious judicial resources" and that § 1915(g) would "free up judicial resources for claims with merit by both prisoners and nonprisoners"); id. at S7524 (statement of Sen. Robert Dole) ("Frivolous lawsuits . . . waste valuable judicial and legal resources, and affect the quality of justice enjoyed by the law-abiding population.").

Counting summary judgments as strikes is wholly out-of-step with this intent. Doing so would require courts to engage in a time-intensive, individualized inquiry to determine whether, in each of a plaintiff's prior cases, a court had granted summary judgment on the basis of a specific statutory criterion not required for the grant of summary judgment, i.e., frivolousness, maliciousness, or failure to state a claim. In Tolbert, we emphasized this very point, noting that "[t]o require district courts to so parse summary judgment orders and their supporting documents would even further increase their workload, again straying far afield of the purpose of the PLRA." 635 F.3d at 653 n.7.

Other courts, too, have recognized the need for bright-line rules for identifying strikes to avoid increasing courts' workloads in contravention of the PLRA's purpose. See, e.g., Byrd v. Shannon, 715 F.3d 117, 125 (3d Cir. 2013) (stating that

rules "reducing litigation on whether a particular dismissal constitutes a strike" serve the PLRA's overriding purpose); Thompson, 492 F.3d at 438 ("In addition to our obligation to adhere to section 1915(g)'s text, we are mindful that a driving purpose of the PLRA is to preserve the resources of both the courts and the defendants in prisoner litigation. Here, all agree that purpose is best accomplished by a bright-line rule that avoids the need to relitigate past cases.").

In an attempt to avoid the reality that their new rule will require this time-intensive parsing -- wreaking the precise waste of judicial resources that Congress sought to avoid -- the majority offers a limitation on this new rule. My colleagues would treat a case disposed of by summary judgment as "dismissed" for purposes of § 1915(g) only when the district court has made explicit that it believed the case was frivolous, malicious, or failed to state a claim. This asserted limitation, however, runs into a different problem. It requires an appellate court inappropriately to acquiesce in a district court's determination of an issue that the parties may not have had an opportunity to address and that is totally unnecessary to the court's grant of summary judgment. See Fed. R. Civ. P. 56 (permitting summary judgment on the basis that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"). The majority's view

thus forces appellate courts into an untenable catch-22: rubberstamp district court decisions on issues not strictly before them or expend time and energy to decide these issues independently.

Limiting strikes to actual dismissals avoids this conundrum. The reviewing court would not need to bind itself to statements a lower court may have made in passing and without briefing by the parties. Moreover, a reviewing court would not need to engage in a searching inquiry of the district court's decision to decide the issues of frivolity or maliciousness for itself. Thus, the straightforward rule that a case resolved on summary judgment is never "dismissed" for purposes of § 1915(g) is both dictated by the statutory language and the only workable rule consistent with the statutory purpose.

## II.

Perhaps recognizing the defects in the majority's rationale, a group of my colleagues join a long concurrence offering a second theory for denying Blakely IFP status. The concurrence, of course, is only dicta, without precedential

51

effect, because a majority of the court does not embrace its theory. There is good reason for this.[2]

The concurrence contends that 28 U.S.C. § 1915(a)(1) permits a court to deny IFP status to a prisoner who does not have three strikes, but who has, in the court's view, previously abused the IFP system, whatever the merits of his current case. This assertion -- that we have broad discretion to deny IFP status to a prisoner who has not had three cases dismissed, on the basis of other aspects of his filing history -- is deeply flawed. Use of such discretion would defy the clear and unambiguous legislative history and the very purpose of the PLRA's three-strikes scheme, a result Congress surely did not intend.

Under 28 U.S.C. § 1915(a)(1), "any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees." The concurrence posits that this language -- that a court "may authorize" a party to proceed IFP -- also implies an inherent authority not to authorize a prisoner to proceed IFP if he has ever previously

---

[2] I do not "sow differences," ante at 26, among my colleagues; I merely count votes, a majority of the court does not join in the rationale advocated by the concurring judges.

52

abused the IFP right, <u>regardless</u> of whether the prisoner has three strikes.

Try as it might, the concurrence cannot reconcile its theory with the telling legislative history of § 1915(a)(1) and § 1915(g). Nearly half a century after the <u>general</u> grant of discretionary authority in § 1915(a)(1) had been on the books, and more than a century after its predecessor had, Congress established a more <u>specific</u> scheme for limiting prisoners' abuse of the IFP system: the three-strikes rule of § 1915(g). <u>See</u> 62 Stat. 954 (1948); 27 Stat. 252 (1892); <u>see also</u> <u>Rivera v. Allin</u>, 144 F.3d 719, 722 (11th Cir. 1998) (noting that "[o]n April 26, 1996, [§ 1915(a)] changed when the President signed into law the PLRA"), <u>abrogated on other grounds by</u> <u>Jones v. Bock</u>, 549 U.S. 199 (2007).

It is "a commonplace of statutory construction that the specific governs the general," and this command applies with particular force where, as here, the general clause (§ 1915(a)(1)) is a "relic" of an earlier (pre-§ 1915(g)) reign. <u>Morales v. Trans World Airlines, Inc.</u>, 504 U.S. 374, 384, 385 (1992). As the Supreme Court explained in <u>FDA v. Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 143 (2000):

> The classic judicial task of reconciling many laws enacted over time . . . necessarily assumes that the implications of a statute may be altered by the implications of a later statute. <u>This is particularly so where the scope of the earlier statute is broad but</u>

> the subsequent statute[] more specifically address[es] the topic at hand. . . . [A] specific policy embodied in a later federal statute should control our construction of the [earlier] statute, even though it ha[s] not been expressly amended.

(emphasis added) (internal citation and quotation marks omitted). The concurrence simply ignores these long-established principles. Undoubtedly, this is because, if properly applied, those principles lead to but one conclusion: the PLRA's specific three-strikes scheme for abusive prisoner-litigants must govern any more general authority that might otherwise apply.[3]

Although the concurrence protests to the contrary, its theory also cannot be reconciled with another long-established statutory construction principle: a court must read statutory provisions in light of the whole statute and the objects and policy of that statute. See, e.g., id. at 133 ("It is a fundamental canon of statutory construction that the words of a

---

[3] Those colleagues who join the concurrence complain that I rewrite § 1915(a), inventing a "limitation" to the statute where none exists. Ante at 35. This criticism is exceedingly odd given that all of these judges also join the majority's extensive rewrite of § 1915(g) to invent an entirely new category of cases -- summary judgments -- that will henceforth count as strike "dismissals." And, of course, the concurrence's criticism is baseless: I do not "rewrite" § 1915(a). Rather, in accord with Supreme Court directives, I simply rely on statutory text, history, structure, and purpose to conclude that, in the limited context of prisoner cases, Congress intended § 1915(a)(1) to be displaced by a new and more specific statute, § 1915(g).

54

statute must be read in their context and with a view to their place in the overall statutory scheme." (internal quotation marks omitted)); <u>Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.</u>, 515 U.S. 687, 698-700 (1995) (emphasizing that we must read a statute in light of its underlying purpose).

Congress enacted the three-strikes statute to eliminate waste of judicial resources by setting forth a single, clear rule for denying IFP status to abusive prisoner-litigants. This rule burdens judicial resources far less than the two-tiered system advocated by the concurrence, for a two-tiered system requires courts to assess both the number of strikes <u>and</u> whether there is some other discretionary reason for denying IFP status. The simpler rule is preferable especially given the amorphous nature of the multi-factor test propounded by the concurrence for determining when an exercise of discretionary authority is appropriate. This multi-factored test would only "further increase [courts'] workload, . . . straying far afield of the purpose of the PLRA." <u>See</u> <u>Tolbert</u>, 635 F.3d at 653 n.7. It defies reason to engage in such a time-consuming inquiry -- in the name of judicial economy -- simply to avoid reaching the merits.[4]

---

[4] As the majority properly and repeatedly explains, we requested Blakely only to "address whether certain orders [four summary judgment orders] constitute strikes" and our review is
(Continued)

Finally, contrary to the concurrence's suggestion, Supreme Court authority hardly supports its view that the lower courts have discretion to deny IFP status to a prisoner who has not accumulated three strikes but has, in the court's view, _previously_ abused the IFP system, regardless of the merit of his current case. First, the Supreme Court does not invoke its own discretionary authority to deny IFP status prospectively without _first_ determining that the petitioner's _present_ case is frivolous. See In re Amendment to Rule 39, 500 U.S. 13, 14 (1991) (per curiam). Thus, the Supreme Court rule does not countenance, let alone support, denial of IFP status to Blakely here solely on the basis of his previous cases. Moreover, the Supreme Court has never denied anyone the right to _appeal_ IFP, i.e., to be granted review on the merits _as of right_. Rather, in every case -- including those relied on by the concurrence -- it has applied this discretionary authority only when a litigant petitions for relief by writ. Obviously, this is a far more limited burden on access to the courts. Finally, the Supreme

---

thus "restricted" to those orders. Ante at 5 n.1; 18; and 22 n.9. At its outset, the concurrence states it "agrees fully" with the majority. Id. at 26. Thus, the concurrence's criticism of Blakely (and me) for our failure to address other cases brought by Blakely, id. at 30-35, seems inexplicable. This is particularly so given that the record evidence as to the character of these cases is, to put it generously, thin.

56

Court has never suggested that the courts of appeals should exercise discretionary authority to deny IFP status to prisoners appealing as of right. Accordingly, Supreme Court precedent offers precious little support for the concurrence's expansive view of the discretion granted in § 1915(a)(1).

In sum, the concurrence refuses to recognize that the PLRA's specific three-strikes rule <u>displaced</u> any general discretionary authority set forth in § 1915(a)(1) with respect to prisoner "action[s] or appeal[s]," 28 U.S.C. § 1915(g). Instead it attempts to <u>extend</u> general discretionary authority well beyond anywhere the Supreme Court has taken it.

## III.

By ignoring the plain language limiting § 1915(g) to dismissals, (and in some cases reading § 1915(a)(1) to swallow § 1915(g)), my colleagues defy the express will of Congress. Worse yet, in doing so, they undermine the most fundamental promise of our legal system: equal access to justice. Their theories fly in the face of our obligation to construe narrowly any limitation on a litigant's constitutional right of access to the courts. <u>See, e.g.</u>, <u>Chambers v. Balt. & Ohio R.R. Co.</u>, 207 U.S. 142, 148 (1907) ("The right to sue and defend in courts is . . . the right conservative of all other rights, and lies at

the foundation of orderly government."); accord Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 817-18 (4th Cir. 2004).

As the Supreme Court recognized in a case on which the concurrence itself relies, "[p]aupers have been an important -- and valued -- part of the Court's docket, see, e.g., Gideon v. Wainwright, 372 U.S. 335 (1963), and remain so." In re McDonald, 489 U.S. 180, 184 (1989) (per curiam). Regrettably, my colleagues disregard this value. By denying Blakely leave to proceed IFP before even glancing at the merits of his current claim, the majority of the court improperly denies an indigent access to justice, and sets a dangerous course for the future.

I respectfully dissent. Judges King, Davis, and Thacker join in this dissent; Judge Gregory joins in Part I.

GREGORY, Circuit Judge, dissenting:

I join part I of Judge Motz's dissent arguing that summary judgment decisions do not qualify as dismissals for purposes of § 1915(g). C.f. Butler v. Dep't of Justice, 492 F.3d 440, 444 (D.C. Cir. 2007) ("had Congress wanted to include dismissals for failure to prosecute among the strikes listed in § 1915(g), it could have done so"). Therefore, Appellant does not have the requisite three strikes that would automatically preclude him from IFP status under § 1915(g).

I write separately to clarify that courts do retain discretion under limited circumstances to deny in forma pauperis ("IFP") status under § 1915(a). However, I would not use that discretion in this case. Such denial implicates the fundamental right of access to the courts. "[T]he ability to seek regularized resolution of conflicts" is fundamental to "an organized and cohesive society." See Boddie v. Connecticut, 401 U.S. 371, 374 (1971). As such, our discretionary power should be used sparingly. For example, discretionary denial of IFP status would be appropriate where an individual files dozens of abusive claims but strategically withdraws them in order to avoid accruing strikes under § 1915(g). While there is certainly evidence that Appellant is a prolific filer, there is no evidence of strategic maneuvering, nor evidence that Appellant's past cases were abusive. Without such evidence of a longstanding, clear pattern of abusive filings, denial of IFP

59

status under § 1915(a) is inappropriate.  For the foregoing reasons, I dissent.